OLESKE, Appellant,

v.

**HILLIARD CITY SCHOOL DISTRICT BOARD OF EDUCATION, Appellee.**

[Cite as *Oleske v. Hilliard City School Dist. Bd. of Edn.* (2001), 146 Ohio App.3d 57.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–294.

Decided Sept. 25, 2001.

58

*Cloppert, Portman, Sauter, Latanick & Foley* and *William J. Steele*, for appellant.

*Scott, Scriven & Wahoff, LLP,* and *Donald C. Scriven,* for appellee.

TYACK, Judge.

On September 15, 1999, Sandra J. Oleske was given notice that her employer, the Hilliard City School District Board of Education ("board"), had adopted a resolution at its September 14, 1999 meeting. The resolution indicated the board's intention to consider the termination of Oleske's continuing teaching contract on the following grounds:

"1. At various times during 1999 (including but not limited to the dates of January 20, February 9, March 8, March 9, and July 16), Ms. Oleske disseminated and/or condoned the dissemination of patently offensive (both in terms of explicit and vulgar sexual content and extreme ethnic insensitivity) materials to, among others a District student, whose identity has previously been disclosed to Ms. Oleske and her counsel. Such materials are attached hereto as Exhibit A, with the names and/or e-mail addresses of recipients redacted out.

"2. At various times throughout the 1996–97 and 1997–98 school years, Ms. Oleske, both on and off school time and on and off school premises, personally told patently offensive jokes and/or stories of a nature comparable to those referenced in Paragraph 1 above to at least three District students, whose identities have previously been disclosed to Ms. Oleske and her counsel, in addition to the student referenced in Paragraph 1 above.

"3. At a point in or about the Spring of 1998, Ms. Oleske, in the presence of one of the District students referenced in Paragraph 2 above, referred to another of the students referenced in Paragraph 2 above as a 'fucking little bitch.'

"4. At various times throughout the 1997–98 and 1998–99 school years, Ms. Oleske, in the presence of some or all of the District students referenced in Paragraph 2 above, deliberately and for the purpose of denigrating and humiliat-

ing a fellow District teacher referred to that fellow teacher with the opprobrious term 'turd.' "

Pursuant to R.C. 3319.16, Oleske demanded a hearing before a referee. A referee was appointed, and a hearing was held. On February 14, 2000, the referee filed a report and recommendation. The referee determined that the board failed to prove the first and third grounds and that the second and fourth grounds were proven. The referee further concluded that the second and fourth grounds, as proven, constituted good and just cause to terminate Oleske's continuing teaching contract. However, the referee indicated there was no factual reason preventing the board from considering a lesser sanction.

On February 28, 2000, the board adopted a resolution. In such resolution, the board accepted the referee's findings and conclusions with regard to the second, third, and fourth grounds. Consistent with the referee's recommendation as to the second and fourth grounds as proven, the board voted to terminate Oleske's continuing teaching contract. Further, and noting that it was not essential to the outcome of the case, the board determined that Oleske at least condoned the transmission of certain inappropriate e-mails to a district student and that that constituted an additional ground supporting Oleske's termination.

Pursuant to R.C. 3319.16, Oleske appealed the termination by filing a complaint in the Franklin County Court of Common Pleas. The parties filed briefs and on February 9, 2001, the common pleas court rendered a decision affirming the termination.

Oleske (hereinafter "appellant") has appealed to this court, assigning the following errors for our consideration:

"I. The Court below erred in holding that the Hilliard City School District Board of Education satisfied the 'good and just cause' standard for terminating a public school teacher's employment contract under O.R.C. Section 3319.16.

"II. The Court below erred in holding that the Hilliard City School District Board of Education did not violate a public school teacher's due process rights under O.R.C. Section 3319.16 where the Board had decided to terminate said teacher's employment prior to any statutory hearing on the matter."

■ We address appellant's second assignment of error first. Appellant contends that she was denied due process because the board (hereinafter "appellee") had determined to terminate her contract prior to the evidentiary hearing. As proof of this, appellant points to appellee's brief that was filed with the referee. In the brief, appellee allegedly "made it clear" that it had already decided that termination was proper. For the following reasons, appellant's argument is not well taken.

First, the "evidence" that the board had already made up its mind is not in the record. Appellant filed a motion with this court to supplement the record with the brief appellee had filed with the referee. However, on May 29, 2001, this court denied appellant's motion on the ground such brief was not part of the original papers and exhibits filed in the common pleas court. Hence, there is no evidence to support appellant's assertion. In addition, a review of the record shows that appellant was clearly afforded due process in these proceedings. Pursuant to R.C. 3319.16 and 3319.161, appellant was given a full and meaningful hearing and the opportunity to be heard, and appellee's resolution clearly set forth in detail the bases for its determination to terminate appellant's contract.

For these reasons, appellant was not denied due process. Accordingly, appellant's second assignment of error is overruled.

In her first assignment of error, appellant asserts that the common pleas court erred in affirming appellee's decision to terminate her contract. R.C. 3319.16 addresses the termination of teacher contracts and states:

"The contract of any teacher employed by the board of education * * * may not be terminated except for gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause. * * *"

Appellant asserts that there was insufficient evidence to support a finding of good and just cause to terminate her contract. While appellant sets forth some arguments as to the weight of the evidence and raises issues regarding the credibility of some of the witnesses, appellant's main contention is that her conduct, as found by the referee and the board, did not rise to the level of good and just cause to terminate.

The standard of review in teacher contract termination cases has been clearly set forth by the Supreme Court of Ohio. The decision to terminate a contract is composed of two parts: (1) the factual basis for the allegations giving rise to the termination; and (2) the judgment as to whether the facts, as found, constitute gross inefficiency, immorality, or good cause as defined by statute. *Aldridge v. Huntington Local School Dist. Bd. of Edn.* (1988), 38 Ohio St.3d 154, 157, 527 N.E.2d 291.

As to the differing roles of the referee and the board of education, the Supreme Court has stated that the referee's primary duty is to ascertain the facts. *Id.* at 158, 527 N.E.2d 291. The referee's findings of fact must be accepted by the board unless such findings are against the greater weight, or preponderance, of the evidence. *Id.* at syllabus. However, the ultimate responsibility for the school system lies with the board. *Id.* at 157, 527 N.E.2d 291. The board's primary duty is to interpret the significance of the facts, and the board

has the right and responsibility to review the referee's findings. *Id.* at 158, 527 N.E.2d 291. In weighing the evidence, the board must give deference to the fact that the referee sees and hears the witnesses. *Id.*

It is the board's responsibility to indicate whether it rejected a referee's findings as being against the preponderance of the evidence or accepted the referee's factual determination but rejected the referee's recommendation based upon a different interpretation of the significance of those facts. *Id.* As to the referee's recommendation, the board has the discretion to accept or reject such unless the acceptance or rejection is contrary to law. *Id.* at syllabus. The board should articulate its reasons for rejecting the referee's recommendation. *Id.* at 157, 527 N.E.2d 291.

On appeal, the common pleas court may reverse an order of termination where it finds that such order is not supported by or is against the weight of the evidence. *Hale v. Bd. of Edn.* (1968), 13 Ohio St.2d 92, 42 O.O.2d 286, 234 N.E.2d 583, paragraph one of the syllabus. Pursuant to R.C. 3319.16, the common pleas court may weigh the evidence, hold additional hearings, and render factual determinations. *Graziano v. Amherst Exempted Village Bd. of Edn.* (1987), 32 Ohio St.3d 289, 293, 513 N.E.2d 282. While the common pleas court has the power to weigh the evidence and determine the credibility of witnesses in an R.C. 3319.16 proceeding, an appellate court is under a limited scope of review. *Id.* at 294, 513 N.E.2d 282. Absent an abuse of discretion, an appellate court may not engage in what amounts to a substitution of the judgment of the common pleas court. *Id.* An abuse of discretion implies not merely an error of judgment but perversity of will, passion, prejudice, partiality, or moral delinquency. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240.

By way of brief background, appellant had been employed by appellee as a music teacher and/or band director. She had been employed pursuant to a continuing teaching contract since September 1977. Appellant received teaching awards, and her accomplishments relating to the band program can safely be described as exceptional. Prior to this case, appellant had never been disciplined by school management for any significant violation of policy, and there had been no reports of any misconduct on her part.

In the years just prior to her termination, appellant's assignments included teaching band at a middle school (grades seven and eight). In August 1999, a parent of one of appellant's former students wrote appellee a letter which alleged, in part, that appellant was sending "dirty e-mail jokes" to his daughter at their home. An investigation occurred that eventually resulted in the four allegations set forth above.

The referee found that the student at issue was sent vulgar, crude, racist, and pornographic/sexually oriented e-mails from appellant's home computer. However, the referee stated that there was dispute as to whether appellant actually caused the transmission of such e-mails. Apparently, appellant had developed a close, personal relationship with the student's mother during 1999. The referee found that the e-mails were sent to the student by appellant or by the student's mother with appellant's consent. It is unclear whether the referee meant that appellant consented to the mere sending of e-mail by the mother or that appellant consented not only to the transmission of e-mail but to the content of such e-mail as well. The referee indicated that the mother had testified that she had sent the materials to her daughter. The referee stated that it was impossible to determine whether the mother or appellant had actually "pushed the button."

The referee stated that he was not convinced that appellant had actually and intentionally disseminated inappropriate e-mails to the student/daughter and that the direct involvement of appellant was not clear. The referee concluded that the first allegation (relating to the transmission of inappropriate e-mail) was not proven.

The referee stated that appellant had admitted at the hearing that she had on occasion told jokes of a sexual nature to certain female, middle school students. Four students testified at the hearing as to these jokes. The referee concluded that the second allegation was proven.

The referee concluded that the third allegation relating to appellant calling a student a name using foul language was not supported by the evidence.

As to the fourth allegation, the referee found that four witnesses had established that appellant had on occasion and in front of students referred to another teacher as "Turd." This other teacher's name was Ms. Turid Gaedeke. Gaedeke was the orchestra director and another music teacher. Appellant denied these allegations. The referee concluded that based on the testimony of the four students and Gaedeke, appellant had indeed exhibited her contempt for Gaedeke by "cleverly mispronouncing" Gaedeke's first name in front of students. The referee concluded that the fourth allegation was proven.

The referee then concluded that the two allegations proven (the dirty jokes and denigration of a fellow teacher) were not of sufficient caliber to constitute gross inefficiency or immorality and that there was no evidence establishing a willful and persistent violation of reasonable regulations. However, the referee concluded that the facts supported a finding of good and just cause to terminate appellant's contract. The referee did indicate that while appellee was under no legal obligation to consider a lesser sanction such as suspension, the facts, the circumstances surrounding appellant's "lapse of professional conduct," and the

lack of any proven injury to students would allow appellant to consider a sanction other than termination.

Upon review of the referee's report and recommendation, appellee agreed that the third allegation was not proven. Appellee accepted the referee's findings and conclusions as to the second and fourth grounds and, based on such, terminated appellant's contract. Appellee went on to state that although it was not essential to the outcome of the case, appellant had at the very least condoned the transmission of two e-mails with sexual content to a student and that such constituted an additional ground supporting appellant's termination. Appellee set forth in detail the reasons for this conclusion.

The common pleas court found that appellee's order was not against the manifest weight of the evidence and that appellant's conduct constituted good and just cause to terminate appellant. Therefore, it affirmed appellant's termination.

First, this court rejects appellant's contentions as to issues involving the sufficiency of the evidence and the credibility of certain witnesses. There was sufficient evidence to support both the referee's and appellee's findings, and we do not determine issues involving credibility.

Appellant's main contention is that the conduct found did not rise to the level of good and just cause sufficient to terminate her contract. The Supreme Court has defined "good and just cause" as a "fairly serious matter." *Hale* at 98–99, 42 O.O.2d 286, 234 N.E.2d 583. The question is whether appellant's conduct in telling students dirty jokes and in calling a fellow teacher an opprobrious name in front of students constitutes a "fairly serious matter." We find that appellee's determination as to the significance of appellant's conduct—that such constituted a fairly serious matter—is explicable and reasonable. Further, the common pleas court's affirmance of such determination was not an abuse of discretion and, therefore, will not be disturbed by this court.

In *Bertolini v. Whitehall City School Dist. Bd. of Edn.* (2000), 139 Ohio App.3d 595, 744 N.E.2d 1245, this court stated that absent a claim that the school board violated a statutory right or constitutional obligation, a common pleas court may not substitute its judgment for that of the board. *Id.* at 604, 744 N.E.2d 1245, citing *Strohm v. Reynoldsburg City School Dist. Bd. of Edn.* (Mar. 31, 1998), Franklin App. No. 97APE07–972, unreported, 1998 WL 151082. In determining whether conduct constituted serious enough matters to justify termination, this court compared the facts in the case before it to those in previous cases. A review of such cases showed that the teacher's behavior had or could have had a serious effect on the school system. *Bertolini* at 608, 744 N.E.2d 1245. For example, such previous cases involved inappropriate sexual relations between faculty and students, conviction of a serious criminal offense, direct refusals to follow board guidelines, and actions which could have caused serious physical

harm to students. *Id.* In reversing the common pleas court's affirmance of the associate superintendent's termination, this court pointed out that the associate superintendent's conduct did not involve any students. *Id.*

In *Florian v. Highland Local Bd. of Edn.* (1983), 24 Ohio App.3d 41, 42, 24 OBR 93, 493 N.E.2d 249, the Medina County Court of Appeals stated that in order to constitute good and just cause under R.C. 3319.16, the conduct complained of must be hostile to the community and cannot be some private act which has no impact on the teacher's professional duties. In contrast to *Bertolini*, appellant's acts were not private; rather, the acts directly involved students. As to the "Turd" reference, appellee adopted the referee's assessment of such conduct in that appellant's behavior was unprofessional and disruptive of proper school decorum.

Regarding the offensive jokes, a review of the record shows that the jokes appellant told students were sexually oriented, "dirty" jokes which were clearly inappropriate. Appellant admitted that she had become too close to these students and had told them these offensive jokes. The referee stated that teachers are role models of appropriate behavior and that members of the teaching profession universally know that a teacher does not engage in this type of conduct. Further, the referee concluded that appellant's actions as a whole violated the trust and responsibility she owed to the school and were contrary to the district's high standards.[1]

The record indicates that appellant's inappropriate conduct was largely limited to a particular period of time and involved, in essence, only certain students. In addition, there was undisputed evidence of appellant's otherwise exemplary employment history and achievements. However, appellant did engage in clearly inappropriate conduct that, at the very least, constituted a serious lapse in judgment.

We note again that the Hilliard city school system is the ultimate responsibility of appellee. It is not within the province of this court to second-guess appellee's determination of the significance of appellant's conduct. We do not sit as a super-school board. Given the circumstances presented herein, we simply cannot find an abuse of discretion on the part of the common pleas court in affirming appellee's order. To do so would simply be to substitute our judgment for that of the common pleas court and/or appellee, and this is not our role.

Accordingly, appellant's first assignment of error is overruled.

---

1. We do not address appellee's findings regarding the two inappropriate e-mails, as appellee properly found that the second and fourth grounds were sufficient to support termination.

In summary, appellant's assignments of error our overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

LAZARUS and KENNEDY, JJ., concur.